Council. The first case today is case number 171132, United States v. Malik Delima. Mr. Sear, good morning. May it please the court, my name is Peter Sear. I represent Malik Delima, the appellant. If I may, Judge Lynch, preserve two minutes, please, for rebuttal. Yes, you may. Thank you. This case, I would like to address two separate issues in this oral argument. The first has to do with the application of three separate wiretaps going back from 2014 to 2015. The second issue has to do with the sentencing issue with respect to a loss calculation that the court made and the issue of whether it was foreseeable to my client, Mr. Delima. With respect to the first issue, the wiretap applications, it is our position that the wiretap resulted, the application was made as a result of the government's request to further an investigation of a drug trafficking activity that was going on in Vermont from March of 2014 through March of 2015. It is our position that law enforcement had significant, had used traditional procedures and those traditional investigative procedures had gathered them ample evidence and significant information about this drug conspiracy to the extent that even in the summer of 2014, I would suggest, they had enough information to arrest several of the co-conspirators, if not most of the co-conspirators. Well, probable cause to arrest is one thing. You can have plenty of probable cause and not have a strong enough case to prove to a jury beyond a reasonable doubt. So the fact that they had probable cause does not get you to the point that you need to go on this issue. No, fair enough, Judge, and I would suggest to the court that they had more than probable cause. They had enough information based on just using the typical other investigative procedures to arrest and get a conviction for most of these co-conspirators. The conspiracy is alleged from March 14th, the Vermont conspiracy, from March 14th up to March 15th. The first application for a wiretap wasn't made until, I think, the end of December of 2014, which suggests that they had significant information. They knew about the conspiracy for the majority of the conspiracy. In fact, 10 of the 12 months of the conspiracy, they had information relating to that conspiracy. It really boils down to, from our position, the necessity of the wiretap. We know that the statute is designed to do two things, to allow the government to apply for a wiretap, but also to protect individuals and their privacy rights on the phone. And so the statute is pretty clear. It's not just a matter of, if we have probable cause, we can apply for a search warrant to tap a phone. You need more than that. Not only do you need probable cause, but you need necessity. The affidavit, the first affidavit, lists a number of, it is true, it does list a number of investigative techniques that the government had used and the evidence that they had gained as a result of those techniques. And essentially, that information was enough to find all these conspirators guilty. The issue I'd also like to focus on a little bit, Judge, is the fact that it's really the third application that Mr. DeLima, Malik DeLima, is caught up in. And what I would suggest is, even if there was a necessity for the first application at the end of December of 2014, or even the second application in January of 2015, there certainly wasn't a necessity for the last application, which was on February 23rd of 2015. By that time, the government had its case that was solid against the Vermont conspirators. And so the necessity, I would suggest, was limited. And there was no necessity at that point. They had their case. With respect to the issue of loss, if I may address that, Your Honor, in that particular, what we have is a number of, we have a computer that was found, Mr. Noel. We know from the evidence that Mr. Noel had been involved in the counterfeit access devices for some time. This computer was found in a room that the conspirators had used, had gathered in. There was a search warrant. The computer was found. This was Guy Noel's computer. Mr. DeLima, the evidence suggests, and from the wiretap, from the February 23rd wiretap application, that Mr. DeLima became involved in the conspiracy for the access devices on February 23rd. On February 26th, that's when it started, up until March 24th. So less than a month, he was involved in this conspiracy. We're suggesting that the court erred in finding that Mr. DeLima had any knowledge or was involved in any way with this conspiracy prior to February 26th. And when you look at the period from February 26th to March 24th, there is insufficient evidence to show that it was foreseeable that Mr. DeLima would have known or had an idea or expectation that there were that many access devices on Mr. Noel's computer. Never had access to that computer. There's no phone calls between Mr. DeLima and Mr. Noel. So that's really, it's the foreseeability argument. Wasn't his brother the head honcho? It's not like he just got on the phone and his brother said go do this and he went and did that. They seem to be confiding in one another about the conspiracy as a whole. There are phone calls between Mr. DeLima, between Malik and Gary DeLima. I would suggest to the court that within the context of all, there are certain phone calls that the court relies on. There are other phone calls in which Gary DeLima is specifically telling Malik DeLima that this is my operation. I orchestrate this. This is my equipment. Would you like to put up some money? Would you like to invest in what I'm doing? And it was our position at the sentencing hearing that Mr. DeLima, Malik DeLima, was simply an investor. He was in New York. From time to time Gary DeLima would call him when the opportunity arose. You make a fair point. He wasn't running it. But for this issue, whether he was running it or not would not be dispositive. If he had knowledge as a co-conspirator, that's the point you need to convince us that there's no basis in the facts for inferring that he had knowledge of the overall contours of the conspiracy and hence what Noel was doing. What I would suggest, Judge, is that I understand and I think what we're getting to is the foreseeability aspect of it. There was a greater conspiracy. There was a total loss amount that was attributable to that conspiracy. And our argument simply was that it was not foreseeable to Malik, based on the evidence, the entire amount of access devices and the entire scope of the conspiracy was not foreseeable to Malik. Thank you. Thank you. Counsel. Good morning. My name is Michael Conway and I represent the United States. Perhaps I will begin where Mr. Sear ended and that is Mr. Malik DeLima's knowledge of what is going on. We respectfully submit that Judge Singel had ample basis in this record to conclude that Mr. DeLima was not oblivious to what was on that laptop. Just starting out with what Mr. DeLima is acknowledging in his brief. First, he's acknowledging investing money in the overall scheme. He's acknowledging connecting his brother, Gary, to another co-conspirator to further the conspiracy's aims. And he's acknowledging engaging in discussions with Gary DeLima about plans and aspirations concerning the conspiracy. So those three things alone get us a meaningful distance toward the appropriateness of Judge Singel's findings. But in addition to that, your honors, we have much more. We have Gary DeLima and Malik DeLima conferring on the size of orders of access devices. That's at call 828, the first call in the transcript series of calls. Gary DeLima says, quote, how much are you trying to get? $1,500 for $100 clip, unquote. Malik responds, yeah, get $1,500, unquote. Special Agent Vasulo testified that the $1,500 is a reference to $1,500 and the $100 is a reference to the individual bank numbers. That's at the record page 201. We know that Malik DeLima gave advice on how to test the cards. That's at call 3310. G. DeLima says, quote, is there like a store where I can check the pieces to make sure everything in that, unquote. Malik responds, yeah, go get a place where they sell movies and expletive. Special Agent Vasulo explained that Malik is giving Gary advice on how to test the cards to ensure that they're working properly. We know that Malik gave advice about acquiring and using vehicles. That's at call 1307 where they discussed the Ultima, the availability of the Ultima to ferry the women around that Malik had gathered. We know that Malik DeLima gave advice to Gary on how to run the operation, call 4300. Special Agent Vasulo explaining that this call is a reference to the girls that Malik was recruiting to run the cards. We know that Malik DeLima invested in the purchase of stolen account numbers. That's at call 6204. We know that Malik made managerial decisions as to where personnel should be sent. That's at call 7488. We know Gary DeLima conferred with Malik DeLima on the activity in Pittsburgh and that Malik DeLima made decisions about that activity. That's at call 7488. We know Malik DeLima shared the profits of the criminal conduct. Several calls, 7568, 7578, and 7604. We know Gary DeLima and Malik DeLima conferred about how things in Maine were progressing and they were commenting on how good things were going. That's at calls 7262, 7273, and 8182. So this is not someone who just happens to be around when the search is conducted and just had a limited knowledge of what's happening. This is someone who is immersely, intently, and firmly immersed in this conspiracy. With respect to the loss amount, Your Honors, I probably could have been more clear in my brief on this, but Judge Singel engaged in just a simple mathematical calculation that the guidelines call for. We have $500 per access device. In the testimony, Judge Vassula was limiting his counting just to March. Just to that one period. One thousand, twenty-five separate numbers. Those consisted of actual cards recovered. Those consisted of card numbers in e-mails recovered from the laptop and card numbers in text documents in the laptop. Some of the numbers on his index were found in both the physical form and on the computer. Those were not counted twice. So this is a very conservative figure that he came up with, one thousand, twenty-five. And of those one thousand, twenty-five, half of them were confirmed to be actual count numbers with the banks, which Judge Singel was correct to find to be a meaningful representation of what's going on. So just for the month of March, we have a thousand, twenty-five, multiply that out times five hundred, and we're just short seventy-five cards. So Judge Singel just had to come up with a reasonable basis to conclude that the conspiracy as a whole involved at least seventy-five more cards. Is that correct? I thought you had to exceed fifty-five, five hundred and fifty thousand. Correct. So seventy-five only got you to five hundred and fifty thousand. That's correct. So you were a card short. The finding was minimally involved, at least involved fifty-five, probably hundreds more I think was his quote. So he made it clear that even if he was a card short, he's convinced that this is vast and we're talking much more than seventy-six. In terms of the wire, I'll just point out that the appellant was suggesting that the investigation took such a long time before the first application that that just goes to show that they were doing what they were supposed to do. They were exhausting all investigative efforts before they went up on the phone. And each separate affidavit outlined in intricate detail for the court what they had tried, why it didn't work, and each individual affidavit was tailored to the time period before. I took a piece of the affidavit and put it in the brief, but this is laser-beam detail on what they found. And while they had a lot of information, what they did not have was the identity of the sources and the specific means by which the drugs were being trafficked. And so we respectfully assume that Judge Singleton was correct to find the necessity element had been met. If there are no further questions, we rest in the briefs. Thank you. Thank you. Mr. Duceyre. With respect to the loss, the actual, and as it relates to the reasonableness of the sentence, the actual loss was $28,000. And that comes from the restitution amount that was ordered in this case. And the court found the actual loss to be that $28,000. The problem that Malik Dolema is having here is that you have an actual loss of $28,000, and then at the other end you have a guideline that requires the $500 minimum and bumps that loss up to between $1.5 million down to $550,000. So there's a big difference in the actual loss and what the guidelines are suggesting, and that is bringing up the guideline range by 14 levels. So it's significant. And what we were asking in this particular circumstance, given where Malik was in this conspiracy, that the sentence of 75 months was not reasonable based on the actual loss of being $30,000. So are you challenging the guideline calculation or are you challenging the guideline's presumption of the $500? I didn't read your brief as the latter. I read you as only raising the claim that there weren't enough cards to make $550,000. That's correct, Judge. That's what I was specifically stating in the brief, and we stick to that. So it's all the number of cards. I'm sorry, Judge? The sole issue is the number of cards, the reasonableness of the approximation of the number of cards. That is the issue. I was simply trying to dovetail that into the reasonableness argument that we're making here, that Mr. Doleen is making. Thank you. Thank you. Thank you both.